Date signed February 07, 2008



*James F. Schneider*
**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| AIR CARGO, INC., et al., | * | Case No. 04-37512-JS |
| Debtor | * | Chapter 11 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| THE AIR CARGO, INC. LITIGATION TRUST, by and through its Trustee MARTIN FLETCHER, | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Adv. Proc. No. 06-2011-JS |
| i2 TECHNOLOGIES, INC. and MERCER MGT. CONSULTING, INC., | * | |
| | * | |
| Defendants | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### *MEMORANDUM OPINION DENYING MOTIONS TO DISMISS*
### *AMENDED COMPLAINT*

The instant motions to dismiss came on for hearing before this Court on August 23, 2007.  For the following reasons, the motions will be denied.

## FINDINGS OF FACT

1. The debtor, Air Cargo, Inc. ("Air Cargo") was in the business of providing services to various airlines for the movement of cargo, acting as an agent between the airlines and freight forwarders in order to facilitate the transfer of cargo by motor carriers.

2.  On December 7, 2004, Air Cargo filed the above-captioned Chapter 11 bankruptcy case in this Court.

3.  On December 22, 2004, Air Cargo filed Schedules A-J [P. 43].  The schedules did not list a claim against either i2 Technologies, Inc. ("i2") or Mercer Management Consulting, Inc. ("Mercer").

4.  On March 17, 2006, Air Cargo filed a disclosure statement [P. 374].  The disclosure statement did not identify any claim against i2 or Mercer.

5.  On May 8, 2006, Air Cargo and the Official Committee of Unsecured Creditors filed a "Modified Joint Plan of Liquidation" (the "Plan") [P. 433]. The Plan did not identify any claim against i2 or Mercer.

2

6.   On May 19, 2006, this Court approved the disclosure statement and confirmed the Plan by order [P. 440]. The effective date of the Plan was June 14, 2006.

7.   The Plan provided for the liquidation of Air Cargo by creating a litigation trust, the stated purpose of which was to "liquidate all of the assets of the Estate, including but not limited to prosecution of all claims of the Estate and claims contributed to the Litigation Trust pursuant to the plan." Plan, Art I, § 1.34. The Plan appointed Martin Fletcher, former counsel to the Unsecured Creditors Committee, as litigation trustee, and authorized him to exercise all of the powers of a Chapter 11 trustee, if one had been appointed. Plan, Art IV, § 4.3.[1]

---

[1]The Plan conferred the following powers upon the litigation trustee:

The Litigation Trustee shall have the sole right, power and authority, among other things, to: (a) object to any Claim; (b) file suit or commence an action or proceeding with respect to any claim or cause of action of the Debtor and/or the Estate, including, without limitation, Avoidance Actions, and otherwise prosecute, settle, compromise or pursue such claim or cause of action; (c) retain and employ professionals as the Litigation Trustee deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Litigation Trustee deems reasonable; (d) the Litigation Trustee is permitted to employ professionals that have been previously employed by the Debtor or the Committee; (e) execute and enter into contracts on behalf of the Estate or the Litigation Trust as the Litigation Trustee Agent deems necessary or appropriate to carry out the terms and purposes of the Plan and on such terms as the Litigation deems reasonable; (f) liquidate all assets of the Debtor, the Estate and the Litigation Trust to pay the related Liquidation Expenses; (g) distribute funds to holders of allowed Claims consistent with the terms of the Plan; (h) file a final report and move to

3

8. The four main assets of the litigation trust included 1) the recovery of a tax refund; 2) any remaining tangible assets; 3) accounts receivable; and 4) funds resulting from the anticipated prosecution of avoidance actions, including actions to avoid and recover fraudulent transfers and preferences.  Plan, Art IV, § 4.2.

9.  The Plan contained a "retention of jurisdiction" clause,  Plan, Art IV, § 8.1.[2]

---

close the Debtor's Chapter 11 case; and (I) to take such other and further actions as may be necessary or appropriate to carry out the terms and purposes of the Plan.

Plan, § 4.4.

[2]The clause provided as follows:

8.1  Retention of Jurisdiction.  Notwithstanding the Confirmation of the Plan, the Court will retain jurisdiction until consummation of the Plan to ensure that the purposes and intent of the Plan are carried out. The Court's jurisdiction shall be over any and all disputes and litigation pending at the time of the Confirmation of the Plan, any controversies that may arise thereafter, and any controversies that may affect the Litigation Trustee's ability to effectuate the consummation of the Plan. By way of illustration of the jurisdiction retained by the Court, but not by way of limitation of the same, the Court shall retain jurisdiction in this case, among other things, for the following purposes:

(a) The classification of the claim of any creditor and the re-examination of claims which have been allowed for the purposes of voting, and the determination of such objections as may be filed to the Claims of creditors.  After the Effective Date, only the Litigation Trustee and the Trucker Trustee may object to claims.  The deadline to object to claims shall be the ninetieth (90th) day after the Effective Date.  The failure by the Debtor, Litigation Trustee, the Bank and/or the Committee to object, or to examine any Claim for purposes of voting, shall not be

4

deemed to be a waiver of the right of the Litigation Trustee or Trucker Trustee to object to or re-examine any Claim in whole or in part.

(b) Except to the extent that the Litigation Trustee chooses to invoke the jurisdiction of a state court, the determination of all causes of action, controversies, disputes and conflicts involving, or relating to, the Debtor or its assets, arising prior to or after the Confirmation Date, whether or not subject to an action pending as of the Confirmation Date, between the Debtor, the Litigation Trustee, the Bank and any other party or parties, including but not limited to, any right of the Litigation Trustee to recover assets or avoid the Avoidable Transfers pursuant to applicable provisions of the Bankruptcy Code.

(c) The modification of this Plan after confirmation to correct any defect, to cure any omission, or to reconcile any inconsistency in this Plan or in the Order of Confirmation, as may be necessary or otherwise appropriate to carry out and or/ clarify the intended purposes of the Plan or the Order of Confirmation.

(d) The allowance of compensation for professional services rendered to the Estate by the Debtor's professionals and the Committee's professionals, pursuant to §330(a) of the Bankruptcy Code, upon application for such compensation.

(e) The enforcement and interpretation of the terms and conditions of this Plan, including any agreement for satisfaction of an Allowed Claim.

(f) The determination of the existence of any liens, encumbrances, or interests of other parties in property of the Estate or the Debtor, and the extent and priority thereof.

(g) The enforcement of, and the continuation of, the automatic stay and any similar equitable relief with respect to post-confirmation actions against the Debtor, the Estate, the Litigation Trustee and/or property of the Estate.

10.  Between November 23, 2006 and December 1, 2006, the litigation trustee filed 161 complaints in this Court to void various alleged preferential transfers (Adv. Proc. Nos. 06-1807 through 06-1918, 06-1939 through 06-1982, 06-1984 and 06-1985, 06-1988, 06-1990, and 06-1997).  On December 5, 2006, the litigation trustee filed six additional complaints for the turnover of property (Adv. Proc. Nos. 06-2001 through 06-2006).

11.  On December 6, 2006, the litigation trustee filed the instant adversary proceeding against i2 and Mercer.  On March 9, 2007, the litigation trustee filed a first amended complaint [P. 6].

12.  The instant adversary proceeding is unique among the 168 adversary proceedings because it alone seeks to recover fraudulent conveyances and also asserts a variety of other state law causes of actions against the defendants.

13.  The amended complaint contains the following allegations: In 2002, Air Cargo began implementing a business plan requiring the deployment and installation

_____

(h) Entry of an order concluding and terminating the case.

(I) This Chapter 11 Plan shall be deemed fully administered upon the payment of any Allowed Claim, in full or in part, including but not limited to, any payment of post-petition professional fees.

*Id.*

6

of a new information technology platform.  In March 2002, Air Cargo met with i2 to discuss a contract for installation  of this platform.  i2 proposed certain "information technology architecture" and submitted the proposal to Air Cargo.  On July 18, 2002, Mercer provided a report to Air Cargo and the Carlyle Group which approved the platform.  On August 12, 2002, Air Cargo entered into a written contract with i2.  The information technology which i2 provided was insufficient to meet the needs of Air Cargo.  It is alleged that i2 knew what information technology Air Cargo needed to carry out its new business strategy, and that i2 and Mercer knew from the beginning that the platform provided by i2 was insufficient for those purposes.

14.  Air Cargo paid i2 an initial fee of $3.2 million.  Additional payments brought the total amount paid to $5.7 million.

15.  The amended complaint contains seven counts, for breach of contract against i2 (Count I), breach of contract against Mercer (Count II), intentional misrepresentation and fraud against i2 (Count III), negligent misrepresentation against i2 and Mercer (Count IV), negligence and malpractice against i2 and Mercer (Count V), avoidance and recovery of fraudulent conveyances from Air Cargo to i2, totaling "no less than $5.7 million" (Count VI), and the avoidance and recovery of fraudulent conveyances from Air Cargo to Mercer, totaling "no less than $100,000" (Count VII).

16.  On May 4, 2007, i2 filed a motion to dismiss, or in the  alternative, to abstain [P. 24], in which it alleged that the bankruptcy court lacks subject matter jurisdiction because the complaint does not concern "core" matters or matters "related to" the bankruptcy; that the District of Maryland is not the proper venue for the complaint; and that the causes of action are barred by judicial estoppel and *res judicata*.

17.  On June 11, 2007 Mercer filed a motion to dismiss [P.41].  Mercer argued that the litigation trustee's claims for breach of contract and negligence must be dismissed for lack of subject matter jurisdiction.  Additionally, Mercer argued that the litigation trustee's fraudulent conveyance claim failed as a matter of law, on the grounds that it lacked a good faith basis, failed to identify an actual creditor that could bring such a claim under state law, failed to establish the absence of fair consideration, and failed to allege the fraudulent conveyance with particularity.  Mercer also argued that all the claims against it should be dismissed under the doctrines of judicial estoppel and *res judicata* because Air Cargo failed to disclose any claims against Mercer in its schedules and disclosure statement.  Mercer also argued that the claim for breach of contract must fail because of the failure to allege the existence of a contractual agreement, any breach thereof, and any damages incurred thereby.  Mercer argued that the negligent misrepresentation claim must fail because the complaint did

not plead it with particularity, that Mercer's statements were only its expression of an opinion, that Mercer and Air Cargo were equally sophisticated parties, that Mercer did not make any false statements, that the amended complaint does not allege facts demonstrating justifiable reliance, that the amended complaint does not allege facts showing proximate causation, that the negligence claim is a replication of its negligent misrepresentation claim, that the amended complaint alleges economic losses not recoverable at law and that it does not properly allege proximate causation of damages.

## *CONCLUSIONS OF LAW*

### *Subject Matter Jurisdiction*

1. Bankruptcy subject matter jurisdiction is conferred by statute.  28 U.S.C. § 1334(a) provides that the United States district courts "shall have original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. § 1334(b) provides that the United States district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[3]  Therefore, in order to be able to hear and determine the instant complaint, this

[3]If the district court has jurisdiction, it may refer the matter to the bankruptcy court, which is a unit of the district court.  28 U.S.C. § 157; 28 U.S.C. § 151.  In the District of Maryland, as in all U.S. districts, the reference is automatic.  *See* Local District Rule 402, Rules of the United States District Court for the District of Maryland.

Court must first determine whether the complaint states causes of action "arising under," "arising in," or "related to" the underlying bankruptcy case.

2. Controversies "arise in" title 11 when they "have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 555 (3rd Cir.1999). Claims "arise under" title 11 if the claims "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002).

3. The bankruptcy court has "arising under" jurisdiction over claims for the avoidance and recovery of fraudulent conveyances. *See Huffman v. Perkinson (In re Harbour)*, 840 F.2d 1165, 1167-68 (4th Cir. 1988). The question remains whether the Court also has "related to" jurisdiction over state law contract, negligence, negligent misrepresentation and fraud claims. Alternatively, a question also exists whether this Court has "related to" jurisdiction over the fraudulent conveyance claims.

4. The Fourth Circuit has adopted the same test for determining "related to" jurisdiction as has the Third Circuit, stating that "the test for determining whether a civil proceeding is "related to" bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984).

10

5.  However, after a Chapter 11 plan has been confirmed, both the Third and Fourth Circuits have narrowed the expansive reach of bankruptcy jurisdiction.  In the recent case of *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831 (4th Cir. 2007), the Fourth Circuit expounded on the extent of the subject matter jurisdiction that a bankruptcy court may exercise in a Chapter 11 case after the confirmation of a plan:

> *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)] was decided in a pre-confirmation context, however, and the Third Circuit has since examined "related to" jurisdiction from a somewhat different analytical perspective, in a post-confirmation context.  Recognizing that "[c]ourts have applied varying standards to determine whether 'related to' jurisdiction should be upheld post-confirmation," it endeavored to distill the "essential inquiry" or common thread throughout the decisions, including our decision in *Bergstrom. Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 166 (3d Cir. 2004).  In its view, "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id*. at 166-67.  According to the court, for "related to" jurisdiction to exist at "the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process – there must be a close nexus to the bankruptcy plan or proceeding." *Id*. at 167.  Practically speaking, under this inquiry "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id*.

> We find the Third Circuit's "close nexus" requirement to be a logical corollary of "related to" jurisdiction.  Analytically, it insures that the proceeding serves a bankruptcy administration purpose on the date the bankruptcy court exercises that jurisdiction.  Without such a purpose,

11

"related to" jurisdiction would extend beyond the limited jurisdiction conferred upon bankruptcy courts in the post-confirmation context.

486 F.3d at 836-7. *See also Guttman v. Martin (In re Railworks Corp.)*, 325 B.R. 709, 717 (Bankr. D. Md. 2005) (clause in confirmed Chapter 11 plan reserving claims sufficiently preserved the right of a liquidation trustee to pursue postconfirmation avoidance claims.).

6. In *Valley Historic*, the Fourth Circuit found that the bankruptcy court lacked subject matter jurisdiction over a post-confirmation lawsuit where the plan did not provide the debtor the authority to prosecute claims for breach of contract and tortious interference, and any recovery would not benefit the creditors of the estate. The plan provided that claims of creditors would be paid exclusively from the debtor's business operations and collections of postpetition rents. The plan had not only been confirmed, it had been substantially consummated. Thus, the adversary proceeding had no "conceivable bankruptcy purpose" because it did not affect the estate or the payment of claims of any creditors. *Id.*

7. Unlike the suit in *Valley Historic*, the instant complaint is the "typical" post-confirmation adversary proceeding in which *Valley Historic* acknowledges the "close nexus" is present, namely those "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan

[that] will typically have the requisite close nexus." *Id. (citing In re Resorts, Int'l, Inc.*, 372 F.3d 154, 167).

8.  The Plan in the instant case provides that all funds ultimately recovered in any lawsuit brought by the litigation trustee will be devoted to satisfy the claims of creditors.  The amended complaint provides that with interest, the litigation trustee's claim against i2 alone could be worth as much as $10 million.  This would be the largest single asset of the litigation trust.  Accordingly, adjudication of this claim necessarily will affect the implementation, consummation, execution, and administration of the Plan.

9. i2 and Mercer have alleged that there is no longer any subject matter jurisdiction because after having confirmed a plan and having established a litigation trust, there is no longer an "estate" for the instant adversary proceeding to have an effect on.  However, this Court has held previously that it has subject matter jurisdiction over a post-confirmation action pursued by a litigation trustee concerning prepetition fraudulent conveyance and preference claims.  In *Railworks*, 325 B.R. at 723, Judge Derby held that "the implementation of the payment of unsecured creditors through claims prosecuted by the Litigation Trustee is precisely at issue, and falls squarely in the realm of limited jurisdiction that a bankruptcy court may hear." *Id.*.  Thus, even though the estate technically terminated at the time of the confirmation of

13

a plan, the bankruptcy court retains subject matter jurisdiction over a post-confirmation action by a litigation trustee.  This holding was left undisturbed by the Fourth Circuit's decision in *Valley Historic*.

10.  The facts in *Resorts* are markedly different from both *Railworks* and the instant case.  *See Resorts*, 372 F.3d 154.  In *Resorts*, the Third Circuit held that the bankruptcy court lacked subject matter jurisdiction over a post-confirmation action for malpractice filed by a litigation trustee against a firm that had rendered accounting and auditing services to the litigation trust.  *Resorts*, 372 F.3d at 164-70.  The malpractice suit brought in the bankruptcy court seven years after the plan was confirmed alleged that the accountants erroneously reported that accrued interest on litigation trust accounts belonged to the debtor and not the trust.  *Id.* at 157.  The Third Circuit held that the bankruptcy court's post-confirmation "related to" jurisdiction is less likely to encompass a civil proceeding that involves a litigation trust rather than the estate.  *Id.* at 169 (finding that "[t]he deliberate act to separate the litigation claims from the bankruptcy estate weakens the Trustee's claim that the Litigation Trust has the same jurisdictional nexus as that of the estate.").  This was because the confirmation of the plan in *Resorts* vested all of the property of the estate in the reorganized debtor, making it technically impossible for an action by the litigation trust to affect the estate,

14

as required by *Pacor* for "related to" jurisdiction to exist. *Id.* at 165 (citing 11 U.S.C.

§ 1141(b) and *NVF Co. v. New Castle County,* 276 B.R. 340, 348 (D. Del. 2002)).

11.    However, the Third Circuit acknowledged that "courts do not usually

apply *Pacor's* 'effect on the bankruptcy estate' test so literally as to entirely bar post-

confirmation bankruptcy jurisdiction." *Id.  See also Geruschat v. Ernst Young LLP

(In re Seven Fields Dev. Corp.)*, 505 F.3d 237 (3d Cir. 2007) (distinguishing from that

in *Resorts* a creditor's post-confirmation suit for pre-confirmation malpractice against

an accounting firm, in holding that it was a core proceeding within the "arising in"

jurisdiction of the bankruptcy court and was therefore not subject to the *Pacor* "close

nexus" test.) .  Accordingly, the *Resorts* court still looked for a close nexus in order

to find subject matter jurisdiction, and used the existence of a litigation trust as a

factor in determining whether there was such a nexus.  Therefore, this Court will

similarly look for a close nexus, and consider the existence of the litigation trust as

one factor in its determinations.

12.  Several determinative factors existed in *Resorts* that do not exist in the

instant case.  One difference is the type of plan that created the litigation trust.  The

plan in *Resorts* was a plan of reorganization; the Plan in the instant case is one of

liquidation.   Several courts have disagreed on whether there is greater post-

confirmation subject matter jurisdiction over a litigation trust when it is created by a

plan liquidating the assets of the debtor. *See Boston Reg'l Med. Ctr. v. Reynolds (In re Boston Reg'l Med. Ctr.)*, 410 F.3d 100, 106 (1st Cir. 2005) (the fact that the debtor is liquidating "undercuts the primary purposes for parsimoniously policing the perimeter of post-confirmation jurisdiction: the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors"); *see also Cross Media Mktg. Corp. v. CAB Mktg., Inc. (In re Cross Media Mktg. Corp.)*, 367 B.R. 435, 444 (Bankr. S.D. N.Y. Apr. 25, 2007) (finding that the court had post-confirmation jurisdiction because the plaintiff's confirmed plan was a liquidating plan); *but see Shandler v. DLJ Merch. Banking. (In re Insilco Techs. Inc.)*, 330 B.R. 512, 524-25 (D. Del. 2005) (finding that the "jurisdictional statutes apply without differentiating between liquidating and reorganizing debtors" and therefore there was no "sufficient basis" for such a distinction.).  This Court finds convincing the rationale of *Boston Regional* for the existence of the distinction.  In that case, the court stated:

> There is another, perhaps more important, reason for distinguishing between liquidating plans and true reorganization plans. Courts that have limited the scope of post-confirmation jurisdiction have based their holdings on the conclusion that, once confirmation has occurred, fewer proceedings are actually related to the underlying bankruptcy case. *See, e.g., Resorts Int'l,* 372 F.3d at 165-67; *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir.2001).  That makes good sense: as the corporation moves on, the connection attenuates.

16

> This justification is absent in the case of a liquidating plan. Typically, a reorganized debtor is attempting to make a go of its business. Thus, its actions (including any involvement in litigation) redound primarily to that end and only affect the underlying bankruptcy proceeding in a tangential or derivative way. *See Pettibone*, 935 F.2d at 122-23. By contrast, a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11.

*Boston Regional*, 410 F.3d at 106-07. Thus, regardless of whether the same jurisdictional statutes apply to both liquidating and reorganizing plans, a post-confirmation civil proceeding is far more likely to be "related to" the underlying bankruptcy case when the debtor is being liquidated. Accordingly, this Court finds the fact that Air Cargo is liquidating to be an important factor in assessing the applicability of *Resorts* to the instant complaint.

12. A second difference between *Resorts* and the instant case is the type of claims being asserted. In *Resorts*, the litigation trustee asserted 'ordinary' professional negligence and breach of contract claims that arise under state common law. *Resorts*, at 170. In the instant case, the litigation trustee has filed claims to avoid fraudulent conveyances that arise under federal law. *See* 11 U.S.C. § 548. The proof of the state law claims for breach of contract, fraud, and negligence will be necessary in order to prove that the transactions between Air Cargo, i2 and Mercer were in fact

fraudulent conveyances. The two counts of fraudulent conveyance essentially state that Air Cargo did not receive fair consideration in exchange for its transfers to i2 and Mercer. In order to determine whether the products and services supplied by i2 and Mercer constituted "fair consideration," it will be necessary to determine whether they met the terms of the contract and whether they complied with the representations made by either i2 or Mercer or both. Bankruptcy jurisdiction is more likely to exist in a post-confirmation setting when an adversary proceeding involves claims brought under title 11 than when it concerns entirely state law claims. *See, e.g., Kaye v. Dupree (In re Avado Brands, Inc.)*, 358 B.R. 868, 878 (N.D. Tex. 2006) (citing *Gilbane Bldg. Co. v. Air Sys., Inc. (In re Encompass Servs. Corp.* ), 337 B.R. 864, 872 (S.D. Tex. 2006) (finding that "whether state law or bankruptcy law applies" is one of six factors to consider in determining post-confirmation jurisdiction over a litigation trust).

13. A third difference between *Resorts* and the instant complaint is the point in time at which the causes of action arose. In *Resorts*, the litigation trustee's claim for malpractice arose postpetition, while here, the claims arose prepetition. Thus, these claims were once part of the bankruptcy estate, which enhances the jurisdiction of the bankruptcy court. *See Railworks*, 325 B.R. at 723 (finding that "*Resorts* is much unlike the situation here, where the Litigation Trust Claims are pre-petition

18

claims that could have been asserted by the debtor-in-possession directly prior to confirmation of Debtors' Plan"); *see also Premium Escrow Servs., Inc. v. Sanchez (In re Premium Escrow Servs., Inc.)*, 342 B.R. 390, 399 (Bankr. D. D.C. 2006) (differentiating *Railworks* from *Resorts* because *Railworks* involved a prepetition claim which became property of the estate).

15. The Court also differentiates *Resorts* on the grounds that any proceeds from the suit will benefit creditors.  When the proceeds of a post-confirmation cause of action will benefit creditors, there is a greater likelihood that a "close nexus" exists. *See Premium Escrow Servs.*, 342 B.R. at 400 ("The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly the debtor's unsecured creditors") (citations omitted);  *Wellington Apartment, LLC v. Clotworthy (In re Wellington Apartment, LLC)*, 353 B.R. 465, 470-71 (Bankr. E.D. Va. 2006); *EXDS, Inc. v. CB Richard Ellis, Inc (In re EXDS, Inc.)*, 352 B.R. 731, 739 (Bankr. D. Del. 2006); *Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*, 335 B.R. 309, 324 (Bankr. D. Del. 2005); *Michaels v. World Color Press, Inc. (In re LGI, Inc.)*, 322 B.R. 95, 105 (Bankr. D. N.J. 2005); *see also Valley Historic*, 486 F.3d at 837.

14. The argument has been made that the bankruptcy court lacks subject matter jurisdiction in this case because Air Cargo never listed these claims in its schedules

19

or disclosure statement, nor did it reference these claims in the Plan which created the litigation trust. Several courts have held that specific assignment of the claims in the Plan is necessary for the bankruptcy court to retain jurisdiction. *See Insilco*, 330 B.R. at 525-26 (finding that if the adversary proceeding was "truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan" and declining to find subject matter jurisdiction "based solely upon the Plan's creation of the Creditor Trust to pursue generally defined 'Rights of Action'. . ."); *see also In re WRT Energy Corp*, 2007 WL 2893426 (Bankr. W.D. La. Sept. 28, 2007) (finding "[w]hen the matter at hand involves the liquidation of pre-petition claims *assigned to the trust by the plan*, the nexus is usually sufficient to confer post-confirmation jurisdiction over the matter") (emphasis added) (citations omitted). However, even the *Insilco* case, which contains the strictest interpretation of post-confirmation subject matter jurisdiction, admits that "general language... should usually be sufficient to provide notice to creditors of the right to pursue, post-confirmation, avoidance actions under chapter 5 of the Bankruptcy Code." *Insilco,* 330 B.R. at 526, n. 23. Accordingly, this Court finds that the general

20

language contained in the Joint Plan of Liquidation suffices to keep the claims against i2 and Mercer within the bankruptcy court's jurisdiction.[4]

*Judicial Estoppel*

16.  This Court has previously addressed the doctrine of judicial estoppel in the context of a confirmed plan of reorganization that failed to list a claim.  *See Usinternetworking, Inc. v. Gen. Growth Mgt. (In re Usinternetworking, Inc.)*, 310 B.R. 274, 281 (Bankr. D. Md. 2004).  In that case, Judge Derby wrote that:

> "To be invoked, the doctrine of judicial estoppel requires four elements to be present: '(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently'." *Id., citing Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir.1998).

*Id.*  Judge Derby then granted summary judgment to the defendants, holding that the evidentiary record showed no genuine dispute that all four elements were met.  *Id. at 284.*

---

[4]i2's motion to dismiss acknowledged that its objections to venue were dependent on this Court not having jurisdiction.  *See* i2's motion to dismiss, ¶ 16 ("In this case, assuming the matters are non-core and not related to the Bankruptcy Case, the only possible basis for federal jurisdiction over the claims brought herein would be, if applicable, diversity jurisdiction.  Other than the location of the Bankruptcy Case, the Plaintiff has pled no facts which would justify venue in this District.").  Because this Court has subject matter jurisdiction, venue is appropriate in this district.

17.  The litigation trustee distinguishes *USinternetworking* in three important ways.  First, *Usinternetworking* involved a motion of summary judgment and not a 12(b)(6) motion to dismiss.  Therefore, in that case there was an evidentiary record.  Second, the adversary proceeding in *USinternetworking* was filed against a creditor of the reorganized debtor, so the claim might have been excluded from the plan in order to secure the vote of that creditor.  Here, neither i2 nor Mercer was a creditor and therefore neither was entitled to vote on the Plan.  Third, in *Usinternetworking*, the plan was one of reorganization, whereas in the instant case the debtor no longer exists and has assigned all of its assets to the Litigation Trust.  Therefore, the debtor in *USinternetworking* had a motivation to conceal the claim from creditors, whereas in this case, the motive is not so clear-cut.

18.  Mercer and i2 each cite the same cases to assert that judicial estoppel applies to a claim not scheduled in bankruptcy, but none of the cited cases addresses the issue of why a liquidating company would not schedule a claim.  All of the cited cases deal with either individual debtors in Chapter 7 or reorganized corporations in Chapter 11. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003) (individual); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) (same); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) (same); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314

22

(3d Cir. 2003) (reorganizing corporation); *Payless Wholesales Distribs. v. Alberto Culver (P.R.), Inc.*, 989 F.2d 570 (1st Cir. 1993) (reorganized debtor).

19.   As both of these entities exist after bankruptcy, both have a motivation to conceal claims from the Court.  The motivation of a liquidating entity is less clear, and accordingly cannot be resolved on a 12(b)(6) motion to dismiss.  Accordingly, the Court declines to dismiss on the grounds of judicial estoppel.

*Res Judicata*

20.   i2 and Mercer also seek to dismiss all claims based upon the doctrine of *res judicata*.  This doctrine bars the relitigation of claims when a prior action was a (1) final judgment on the merits; (2) between the same parties; (3) concerning the same causes of action.   *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996).

21.   Both defendants cited opinions which dismissed claims against creditors based upon *res judicata* when a confirmed plan did not list those claims.  *See D&K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y.*, 112 F.3d 257 (7th Cir. 1997); *Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698 (B.A.P. 9th Cir. 1996).  However, in the instant case, neither defendant was a creditor of Air Cargo.  Because neither had any right to vote on the plan, neither were detrimentally affected by the omission of the claim.  Accordingly, the confirmed Plan does not act as *res judicata*

to prevent the litigation trustee from pursuing claims against the defendants , because there is no substantial identity of the parties.

*The Rule 12(b)(6) motions*

22.  The motions to dismiss were brought pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure 7012(b).[5]

23.  When ruling on a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded allegations in the complaint, including all reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff. *Hemelt v. Pontier (In re Pontier)*, 165 B.R. 797, 798-99 (Bankr. D. Md. 1994).  "[A] complaint should not be dismissed 'merely because the court doubts that the plaintiff will ultimately prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted' ." *Advanced Health-Care Services,*

---

[5]Federal Rule of Civil Procedure 12(b)(6)provides as follows:

(b)  Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. . .

(6)  failure to state a claim upon which relief can be granted .

*Id*.

24

*Inc. v. Radford Community Hospital*, 910 F.2d 139, 145 n.8 (4th Cir. 1990), *quoting Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982).

24.  However, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964-65, 167 L. Ed.2d. 929 (May 21, 2007). The pleadings must plausibly suggest that the plaintiff is entitled to relief. *Id* at 1966.

25.  While Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing the pleader is entitled to relief," Federal Rule of Civil Procedure 9(b) requires the circumstances of a claim to be "plead with particularity." The latter rule applies "[i]n all averments of fraud or mistake."

26.  Therefore, it must be determined whether the constructive fraudulent conveyance claims must be pled under the lenient standard of Rule 8, or under the heightened pleading standards of Rule 9(b).

27.  The applicability of Fed. R. Civ. P. 9(b) to constructive fraudulent conveyance claims has not been decided in the Fourth Circuit.[6]

---

[6]The one case which raised the issue in the District of Maryland is not conclusive. *See Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d. 499 (D. Md. 2002).  In that case, a  mortgage company sought to recover fraudulent

28. The applicability of Rule 9(b) to constructively fraudulent claims has divided other courts.[7]

_____

conveyances under theories of actual and constructive fraud. *Id.* at 501. When the transferee of the conveyance sought to dismiss the claims pursuant to Rule 12(b)(6), District Judge Blake applied Rule 9(b) and decided that the pleading met the heightened standard. However, in *Trikeriotis*, it was necessary to apply Rule 9(b) because the plaintiff mortgage company had alleged actual fraud. Once it was decided that the pleading met the heightened pleading standard, it was unnecessary to determine which pleading standard to apply to the constructive fraudulent conveyance claims. Accordingly, *Trikeriotis* did not determine which pleading standard applies in the instant case.

[7]One line of cases holds that heightened pleading standards apply. *See Kranz v. Koenig*, 240 F.R.D. 453, 455-56 (D. Minn. 2007) (dismissing claim of constructive fraudulent conveyance with leave to amend for failure to comply with 9(b)) ; *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997) (applying Rule 9(b) and finding the complaint to be well-pled). A larger, second line of cases differentiates between actual and constructively fraudulent conveyance claims, and only applies Rule 9(b) to complaints that allege actual fraud. *See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 460 (Bankr. S.D. N.Y. 2006) (citing *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr. S.D. N.Y. 1998)) (Rule 9(b) does not "apply to claims of constructive fraudulent conveyance... because they are based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, not on fraud."); *see also Sec. Investor Protection Corp. v. Stratton Oakmont, Inc. (In re Stratton Oakmont, Inc.)*, 234 B.R. 293, 319 (Bankr. S.D. N.Y. 1999) (same); *China Resource Prods. (U.S.A.) Ltd v. Fayda Int'l., Inc.*, 788 F. Supp. 815, 819 (D. Del. 1992) (not applying 9(b) to action under Delaware Fraudulent Conveyance Act which did not allege actual fraud); *Van-Am. Ins. Co. v. Schiappa,* 191 F.R.D. 537, 542 (S.D. Ohio 2000) (not applying Rule 9(b) to fraudulent conveyance claims because Ohio constructive fraudulent conveyance claims "are not at all similar to claims for common law fraud").

29.  This Court finds persuasive the line of cases that hold that Rule 9(b) does not apply where constructive fraud is alleged.  In a complaint to avoid a constructively fraudulent conveyance, there is no requirement to prove any misrepresentation or intent to defraud on the part of the transferor.  *See Van-Am.*, 191 F.R.D. at 542. Rather, the complaint must simply allege that the transferee did not receive fair consideration.[8]

30.  Finally, this Court finds that even were the heightened pleading standards of Rule 9(b) to be applied here, the complaint satisfies those standards.  In *Gen. Elec.*

---

[8]Moreover, the cases have consistently held that heightened pleading standards are relaxed in cases pursued by a third party trustee rather than the debtor.  *See Miller v. Dutil  (In re Total Containment)*, 335 B.R. 589, 600-01 (Bankr. E.D. Pa. 2005); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 277 B.R. 20, 36 (S.D. N.Y. 2002); *U.S. Trust Co. v. Raritan River Steel Co. (In re Am. Spring Bed Mfg. Co.)*, 153 B.R. 365, 374-75 (Bankr. D. Mass. 1993); 10 Collier on Bankruptcy, ¶ 7009.03, at 7009-4 (15th ed. rev.2005).  These holdings are based on the trustee's "inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party."  *See, e.g., Heyman*, 277 B.R. at 36-7, quoting *Schwartz v. Kursman (In re Harry Levin, Inc. t/a Levin's Furniture)*, 175 B.R. 560, 567-68 (Bankr. E.D. Pa.1994) (quoting L. King, 9 Collier on Bankruptcy ¶ 7009.05, at 7009-5 (15th ed.1994)).  Although the litigation trustee is not a case trustee, the rationale applies to him as well.  *See Pardo v. Gonzaba (In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004) (construing 9(b) liberally when a "Creditor's Trust" asserted a claim for a fraudulent transfer).  The litigation trustee in the instant case possesses many of the same powers as a bankruptcy trustee.  Accordingly, this Court finds that even if Rule 9(b) applies, the pleading standard will be construed liberally because the action is being pursued by a litigation trustee.  For these reasons, the Court declines to apply the heightened pleading standards of Federal  Rule of Civil Procedure 9(b) to the instant fraudulent conveyance claims.

*Capital Corp.*, *supra*, in which the Seventh Circuit held that Rule 9(b) was applicable to an action to recover constructive fraudulent conveyances, it also held that the plaintiff must merely describe events surrounding the conveyance and the reasons it was not made for reasonably equivalent value. *Gen. Elec. Capital Corp.*, 128 F.3d at 1080. This the litigation trustee has done.

31. Mercer also contended that the litigation trustee's fraudulent conveyance claim must be dismissed because it fails to identify an actual creditor that could have brought this action under state law. Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title. . ." Accordingly, courts have held that a trustee seeking to avoid a fraudulent conveyance must identify an actual unsecured creditor that could do so under §544(b)(1). *See Tryit Enters. v. Gen Elec. Capital Corp.*, 121 B.R. 217, 221 (S.D. Tex. 1990); *see also Field v. Grand Ltd. P'ship (In re Anton Motors, Inc.)*, No. 90-4262, 1995 Bankr. LEXIS 1220, at *11 (Bankr. D. Md. 1995) (Derby, J.) (unpublished).[9]

---

[9]Mercer cites three cases for the proposition that the complaint should be dismissed for failure to allege an actual secured creditor: the *Tryit* case, the *Anton Motors* case, and *In re Derivium Capital, LLC*, No. 05-15042, 2006 Bankr. LEXIS 3592 (Bankr. D. S.C. Dec 22, 2006). Whatever the precedential value of these cases, they are easily distinguishable. In *Tryit*, the trustee went through an entire trial

32.   The litigation trustee has alleged that "[o]ne or more of Air Cargo's unsecured creditors was a creditor of Air Cargo holding an allowed claim under § 502 of the Bankruptcy Code at the time of Mercer's receipt of the Mercer transfers." Amended Complaint, ¶ 88.  Assuming that Section 544(b)(1) requires that a litigation trustee (and not just a trustee) identify an actual unsecured creditor, this Court finds that the litigation trustee has properly done so for purposes of a Rule 12(b)(6) motion to dismiss.  Applying the liberal notice pleading standards of Rule 8, the Court declines to dismiss the fraudulent conveyance claim on this ground.

33. Mercer also argued that the complaint failed to allege the absence of fair consideration offered in exchange for the money which the debtor allegedly tendered to Mercer through the Carlyle Group.  Mercer argued that the payment satisfied a pre-existing obligation, namely the payment of an antecedent debt.  The litigation trustee responded that "because the Mercer services had no value, there did not exist an

---

without proving the existence of an "actual unsecured creditor ." *Tryit*, 121 B.R. at 221.  This is different from the instant case where this Court has before it a 12(b)(6) motion to dismiss, to which the liberal pleading standards of Rule 8 apply.  The holding in *Derivium Capital* is dicta, and it is unclear whether the trustee's complaint failed to mention the existence of any unsecured creditor or simply failed to specify one in particular.  Finally, in *Anton Motors*, the Court found that the "Trustee failed to allege in its Amended Complaint the *existence* of an actual creditor holding an allowable unsecured claim who could have brought this action under State law." *Anton Motors*, at *11 (emphasis added).  This differs from the instant case where the litigation trustee has alleged the existence of an actual unsecured creditor without actually identifying one.

antecedent debt that was satisfied by the transfer of the Debtor's property." Plaintiff's Opposition to Mercer Management Consulting, Inc.'s Motion to Dismiss at 26.

34. The litigation trustee must show that the services provided by i2 and Mercer were so valueless that the forgiveness of debt for those services could not be considered to have "reasonably equivalent value" to the amounts which Air Cargo paid for them. However, the Court finds the complaint sufficient to overcome the motion to dismiss. The complaint alleges that the services of both Mercer and i2 were not only valueless, they actually harmed the debtor. Accordingly, the Complaint sufficiently alleges the absence of reasonably equivalent value.[10]

35. Mercer argued that the complaint does not state sufficient grounds to allege a breach of contract against Mercer, in that it does not allege the existence of a contract, facts indicating that Air Cargo was a third-party beneficiary, a breach of any contractual obligation and damages. However, the litigation trustee has alleged that

---

[10]Other bankruptcy courts have held, often in the context of Ponzi schemes, that a claim for fraudulent conveyance can exist when the service rendered to the transferor provided no legal value. *See, e.g., Dicello v. Jenkins (In re Int'l Loan Network, Inc.)*, 160 B.R. 1, 12 (Bankr. D. D.C. 1993) (applying Maryland Uniform Fraudulent Conveyance Act); *but see In re Universal Clearing House*, 60 B.R. 985, 998 (D. Utah 1986). In *Int'l Loan*, Judge Teel held that services provided by recruiters for a Ponzi scheme could not possibly constitute "reasonably equivalent value" to the payments for such services, because the services were of no value and actually increased the liabilities of the company which paid for them. *Int'l Loan*, 160 B.R. at 14.

Air Cargo was the "intended beneficiary" of an oral contract for consulting services between the Carlyle Group and Mercer; that this contract was breached when i2 failed to provide a working technology solution for Air Cargo's known new business model and that as a result of Mercer's breach, Air Cargo suffered damages. Amended Complaint, ¶ 45. Accordingly, the litigation trustee has met his burden of pleading a breach of contract claim.

36. This Court will apply the heightened pleading standards of Rule 9(b) to the claim for negligent misrepresentation, but will construe the rule liberally because the action was brought by a third party, namely, the litigation trustee.[11]

37. By itself, the claim against Mercer for negligent misrepresentation falls woefully short of satisfying even a liberal interpretation of Rule 9(b). The litigation trustee had the duty of pleading "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d

---

[11]In a previously unpublished opinion, the U.S. District Court for the District of Maryland (Chasanow, D.J.) has held that the heightened pleading standard applies. *Orteck Int'l, Inc. v. Transpacific Tire & Wheel, Inc.*, 2006 U.S. Dist. LEXIS 67702 at *68- *69 (D. Md. 2006). In addition, one published District of Maryland case implicitly applied Rule 9(b) to a negligent misrepresentation claim. *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 695 n. 5 (D. Md. 2002) (allowing certain claims for negligent misrepresentation but applying 9(b) to disallow catch-all allegation that "[d]efendants made false statements 'otherwise with respect to the investment and the operation of the Business'.").

776, 783-84 (4th Cir. 1999), *citing* 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990). The complaint states simply that Mercer "negligently made false and incorrect representations without exercising due care regarding, among other things, the feasibility of implementing the technology solutions proposed, the impact such a solution would have on Air Cargo's business, the timing for implementation, and the usefulness of the end product." Amended Complaint, ¶ 63. It does not allege the "time, place, and contents of the false representations" and alleges only that the misrepresentations were made by Mercer, not by any individual. However, the litigation trustee argued that by attaching Mercer's agreement with the Carlyle Group as Exhibit A to its motion to dismiss, Mercer provided the particularized facts needed to make the claim viable.

38. Generally, extrinsic evidence should not be considered in deciding a Rule 12(b)(6) motion. However, the Fourth Circuit has held "that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity'." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *citing Phillips v.*

*LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999).[12]   Therefore, the Court must determine whether the defendant's Exhibit A satisfies the plaintiff's liberally-construed, heightened pleading burden.

39.  Mercer's Exhibit A to the memorandum [P. 42] in support of its motion to dismiss, entitled "IT Systems Due Diligence," is a 25-page report which the cover page declares was prepared by Mercer Management Consulting on July 18, 2002 in Lexington, Massachusetts for the Carlyle Group in Washington, D.C..  The report defines Mercer's task as evaluating "the proposed IT architecture approach and supporting software." Report at 4.  It includes a number of statements praising i2's proposed information technology system software, and recommends the implementation of i2's proposal.  The report states that "The IT architecture currently being considered by ACI is robust and provides adequate scalability to increase transaction capacity in the future if required.  Further, the proposed IT strategy provides the necessary technology backbone to enter different freight transportation markets without having to make changes to the IT infrastructure.  The planned IT strategy will provide the basis for ACI achieving its business objectives." *Id*.  The

---

[12]In *American Chiropractic Association*, the defendant was seeking to introduce an exhibit in order to use it against the plaintiff, whereas here, the plaintiff is seeking to use the defendant's exhibit against the defendant.  The Court reasons that if the defendant's exhibit can be used offensively in a 12(b)(6) motion, it can also be used against the defendant.

litigation trustee alleged that the debtor relied upon this statement to its detriment, and incorporated it into Count IV (Negligent Misrepresentation). Amended Complaint at 18, 62. Thus, the litigation trustee has specified at least one statement that might be held to be a negligent misrepresentation, and through the report, has named the time and place that the statement was made. Accordingly, the litigation trustee has satisfied Rule 9(b) in this regard.

40. Mercer also asserted that the negligent misrepresentation claim must fail because Mercer only made predictions and expressions of opinion, Mercer states that it made no false statements in the report, and that the claim does not sufficiently allege justifiable reliance. Because each of these arguments raises plausible factual questions, dismissal on a Rule 12(b)(6) motion is not appropriate. *See Twombly*, 127 S. Ct. at 1960.

41. The Court also finds against Mercer on its argument that the negligence count is unnecessarily duplicative of the negligent misrepresentation count. Under Maryland law, when the gravamen of a count alleging negligence is the negligent use of words, the proper action is for negligent misrepresentation. *Village of Cross Keys, Inc. v. U.S. Gypsum Co.*, 315 Md. 741, 754, 556 A.2d 1126, 1132 (1989). However, when a complaint alleges negligent words and other additional negligent conduct, separate counts are appropriate. *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 263

(4th Cir. 2004).   The litigation trustee argued that Mercer was negligent in its performance of services as well as in the preparation of its report.   This is largely a question of fact and not a proper issue to decide on a motion to dismiss, as opposed to a motion for summary judgment or after a trial.   For the same reason, Mercer's other defenses to the count of negligence, namely the non-recoverability of economic losses and the lack of proximate cause, must fail.

WHEREFORE, the motions to dismiss will be DENIED.

**ORDER ACCORDINGLY.**

cc.    John F. Carlton, Esquire
        Stephen B. Gerald, Esquire
        Kevin G. Hroblak, Esquire
        Whiteford, Taylor & Preston  L. L. P.
        7 Saint Paul Street, Suite 1400
        Baltimore, Maryland  21202
        Counsel to the Litigation Trustee

        Sedica Sawez, Esquire
        Rosenberg Martin Greenberg, LLP
        25 South Charles Street, Suite 2115
        Baltimore, Maryland  21201
        Counsel to i2 Technologies US, Inc.

        Joel I. Sher, Esquire
        Shapiro Sher Guinot & Sandler
        36 S. Charles Street, Suite 2000
        Baltimore, Maryland  21201
        Counsel to Mercer Management Consulting, Inc.

        Office of the United States Trustee
        U.S. Courthouse, Suite 2625
        101 W. Lombard Street
        Baltimore, Maryland  21201